UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PEARL RIVER NAVIGATION, INC.**  **CIVIL ACTION**

**VERSUS**  **No. 07-9616**

**IMPERIAL PETROLEUM, INC.**  **SECTION I/4**

### ORDER AND REASONS

Before the Court is plaintiff Pearl River Navigation, Inc.'s motion for contempt against nonparty respondent Hillside Oil & Gas LLC for an alleged failure to comply with a state court order. For the following reasons, plaintiff's motion is **DENIED**.

### *BACKGROUND*

Plaintiff, Pearl River Navigation, Inc. ("PRNI"), is a Louisiana corporation providing labor and equipment to operators of oil and gas wells.[1] Defendant, Imperial Petroleum, Inc. ("Imperial"), is a Nevada corporation having an interest in certain wells located in the Coquille Bay Field near Buras, Louisiana.[2] Between May and August of 2006, plaintiff provided labor, equipment, machinery, and materials to defendant on open account for use at the Coquille Bay Field.[3] The total amount billed for the various services and equipment was $789,825, of which

---

[1] R. Doc. No. 1-1, compl., ¶¶ 1, 5.

[2] *Id.* at ¶¶ 2, 7. The parties disagree over whether defendant's interest in the wells is a "lease" or an "operating agreement." The distinction is not relevant for purposes of this motion.

[3] *Id.* at ¶ 8.

1

defendant allegedly paid only $237,125, leaving a balance due of $552,700.[4]

On August 1, 2007, plaintiff filed in the 25th Judicial District Court, Plaquemines Parish, a "Complaint for Money Judgment; To Recognize and Enforce Privilege; Writ of Sequestration and for Garnishment Under Sequestration." Plaintiff sought the following: enforcement of its alleged liens under the Louisiana Oil Well Lien Act against defendant's wells; a writ of sequestration directing the Plaquemines Parish Sheriff to seize the wells' hydrocarbon production; service of garnishment interrogatories upon defendant; and damages for breach of contract.[5] On the same day that plaintiff filed its complaint, Judge William A. Roe signed an Order (the "Order") that a writ of sequestration issue directing the Sheriff to take possession of the hydrocarbon production from eleven oil wells in the Coquille Bay Field, and to seize all

---

[4] Defendant disputes the accuracy of plaintiff's accounting, arguing that it was overcharged by plaintiff for the services and equipment provided. R. Doc. No. 6-1, mem. opp., at 2 n.5.

[5] R. Doc. No. 1-1, compl. ¶¶ 13-39.

monies owed to defendant by purchasers of hydrocarbon production from those wells.[6] On November 6, 2007, the Sheriff sent via certified mail to Hillside Oil & Gas LLC ("Hillside") a notice that he had taken certain property into his possession.[7]

Defendant removed the state court action to this Court on December 18, 2007[8] and on January 29, 2008, plaintiff filed its motion for contempt.[9] In its motion, plaintiff asks the Court

---

[6] The Order stated, in pertinent part:

> **IT IS HEREBY ORDERED** that a Writ of Sequestration issue directing the sheriff to seize and to hold, subject to further order of this Court, the hydrocarbon production (oil, gas, condensate, etc.) from the following lease and wells located in Coquille Bay, Plaquemines Parish, State of Louisiana all as further specified herein, to wit:
>
> Lease AO261
>
> Wells:  OA A0261 #001, Serial No. 68691;
>   OA A0261 #011-D, Serial No. 99930;
>   OA A0261 C#001, Serial No. 98000;
>   OA A0261 #015, Serial No. 210773;
>   OA A0261 #011, Serial No. 98332;
>   OA A0261 #008, Serial No. 97193;
>   OA A0261 #006-S, Serial No. 98333;
>   OA A0261 SWD #001, Serial No. 106673;
>   OA A0261 #009, Serial No. 97761;
>   OA A0261 #002, Serial No. 99267;
>   OA A0261 #009-D, Serial No. 99929
>
> all as more particularly described and identified by petitioner in Paragraph 7 of the Complaint
>   It is **ALSO ORDERED** that said Writ of Sequestration shall include seizure of all proceeds owed to Imperial Petroleum, Inc. by purchasers of Imperial's production from the wells so identified above.

R. Doc. No. 4-2, Exh. A.

[7] As elaborated in further detail below, the Sheriff's notice did not expressly describe the property that he took into custody. Instead, it referred to an attached document, which is not present in the record of this case. *See* R. Doc. No. 9-2, Exh. C.

[8] R. Doc. No. 1.

[9] R. Doc. No. 4. Plaintiff did not seek enforcement of Judge Roe's Order while the case was pending in state court even though it alleges that "Hillside failed to comply with [the Order and Sheriff's notice] while this matter was pending in state court, before removal, as well as after." R. Doc. No. 12, reply mem. supp., at 2 n.1.

to hold Hillside in contempt "for its willful, blatant and defiant refusal to comply with [the Order]."[10] Plaintiff seeks an order compelling Hillside to comply with the Order, a finding that Hillside is responsible for any reduction in value of plaintiff's lien, as well as costs and attorney fees.

## *LAW AND ANALYSIS*

**I.    Standard of Law**

"A contempt of court consists of the disregard of judicial authority."  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2960 (2d ed. 1995).  "Courts possess the inherent authority to enforce their own injunctive decrees."  *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).  Contempt proceedings can arise in two forms, criminal and civil; "the purpose of civil contempt is remedial, while criminal contempt is punitive."  3A Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 704 (3d ed. 2004).  A contempt proceeding is civil "if its purpose [is] remedial and [is] intended to coerce the defendant into doing what he was supposed to do."  *United States v. Hilburn*, 625 F.2d 1177, 1179 n.1 (5th Cir. 1980).  Because plaintiff demands Hillside's compliance with the state court order and damages for any subordination of its lien,[11] rather than punishment of defendant or Hillside, the Court will treat this proceeding as one for

---

[10] R. Doc. No. 4.

[11] R. Doc. No. 4-1, mem. supp., at 1.

civil contempt.[12]

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost*, 68 F.3d at 961 (quoting *SEC v. First Fin. Group of Tx.*, 659 F.3d 660, 669 (5th Cir. 1981)). The Fifth Circuit has identified the three elements of civil contempt that must be "establish[ed] by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). The Court reviews these requirements in turn.

## II.     Civil Contempt Analysis

### A.     *A Valid Court Order Was in Effect*

Judge Roe ordered the issuance of a writ of sequestration on August 1, 2007.[13] The parties do not dispute the validity of the Order. Moreover, the federal statute governing sequestered property in a state action removed to federal court states that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. A valid court

---

[12] "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *see also Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 827 (5th Cir. 1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's non-compliance.").

Meanwhile, contrary to plaintiff's contention that the Louisiana Code of Civil Procedure applies, the Federal Rules of Civil Procedure govern this action. *See* 3A Wright et al., *supra*, § 705 ("Contempt is a civil action and governed by the Federal Rules of Civil Procedure . . . .").

[13] R. Doc. No. 4-2, Exh. A.

5

order was, therefore, in effect when the alleged conduct occurred.

B.      *The Order Did Not Require Certain Conduct by the Respondent*

"The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." *Piggly Wiggly Clarksville*, 177 F.3d at 383 (quoting *Martin v. Trinity Indus.*, 959 F.2d 45, 47 (5th Cir. 1992)). "[T]he contempt power should only be invoked where a specific aspect of the injunction has been clearly violated." *Id.* To support a finding of contempt, the disobeyed order "must set forth in specific detail an unequivocal command." *N. Shore Labs. Corp. v. Cohen*, 721 F.2d 514, 521 (5th Cir. 1983) (quoting *Baddock v. Villard*, 606 F.2d 592, 593 (5th Cir. 1979)) (internal quotation mark omitted).

Notwithstanding the validity of the Order, it does not expressly order Hillside to do or refrain from doing anything. Instead, the court issued a writ of sequestration directing the Sheriff to take custody of the hydrocarbon production and sales proceeds from certain wells owned by defendant Imperial.[14] The writ of sequestration does not appear anywhere in the record. What does appear is a notice from the Sheriff of Plaquemines Parish, dated November 6, 2007, informing Hillside that, pursuant to a writ of sequestration, the Sheriff has "seized, sequestered and taken into [his] possession" the property described in "SEE ATTACHED."[15] The identity of the attached document is not clear from the record, but plaintiff claims that the

---

[14] *Id.*

[15] R. Doc. No. 9-2, Exh. C. In its reply memorandum in support, plaintiff modifies its argument to rely not solely on the Order, as it did in its initial memorandum in support, but on the Sheriff's notice "as expressly authorized by the court order." R. Doc. No. 12, reply mem. supp., at 2.

Order was the referenced attachment,[16] an assertion that neither Hillside nor defendant challenge. Meanwhile, how the Sheriff decided to provide notice to Hillside is not explained by either party.

Hillside is not named in the Order nor is it a party to this action. There is authority that "a court may find a nonparty in contempt if that person has actual knowledge of the court order and either abets the [party named in the court order] or is legally identified with him." *Stotler and Co. v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989) (internal quotation marks omitted); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985) (stating that enjoined "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding" (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14, 65 S. Ct. 478, 481, 89 L. Ed. 661 (1945))).

Though the parties dispute whether the Order was properly served upon Hillside, Hillside concedes that it had actual notice of the Order.[17] However, plaintiff has not established that Hillside abetted defendant Imperial (the named party in the Order) in the alleged disobedience. Defendant submits that Hillside is merely the "contract operator" of the wells in question[18] and "owns no interest whatsoever in . . . any of the oil, gas, or other hydrocarbons produced" from the wells.[19] Meanwhile, Plaintiff has not clearly established that Hillside falls

---

[16] *Id.* at 2.

[17] R. Doc. No. 6, at 3 ("On or about November 19, 2007, Hillside received (through certified mail directed to Hillside's manager) a copy of PRNI's Petition, the Order, various garnishment interrogatories and a purported writ of sequestration.").

[18] R. Doc. No. 6-1, aff. of Jeffrey T. Wilson, ¶ 4.

[19] *Id.* at ¶ 5.

7

within the scope of the Order as a "purchaser[] of Imperial's production from the wells."[20]  Nor is Hillside "legally identified" with Imperial simply by virtue of the fact that Hillside serves as "contract operator" on the wells in question.

In short, though plaintiff suggests that Hillside and Imperial have acted in concert to defy the Order, the proffered evidence fails to meet the clear and convincing threshold applicable in a civil contempt proceeding.  *See Piggly Wiggly Clarksville*, 177 F.3d at 382.  Moreover, the scope of the Order is ambiguous with respect to who falls within the category of "purchasers of Imperial's production."  *Id.* at 383.  The Order and the Sheriff's notice, which apparently referred back to the attached Order, do not together form an "unequivocal command" directed to unnamed respondent Hillside.  *See N. Shore Labs.*, 721 F.2d at 521.  For these reasons, the Court concludes that the Order did not require sufficiently certain conduct by respondent Hillside.

*C.     Hillside Did Not Fail to Comply with the Order*

In light of its determination that the Order did not require certain and specific conduct on the part of Hillside, the Court cannot say that Hillside failed to comply with the Order.

**III.    Conclusion**

The Order was inadequate to support contempt sanctions because it did not unambiguously express to Hillside an unequivocal command in definite and specific terms.  The Court declines to deploy the "potent weapon" of the contempt power and it will not hold Hillside in civil contempt.  *See Piggly Wiggly Clarksville*, 177 F.3d at 383.  In light of the foregoing

---

[20] R. Doc No. 4-2, Exh. A.

conclusion, the Court need not consider defendant's remaining arguments regarding Louisiana garnishment procedures and the alleged mortgage interest superior to plaintiff's lien.

Accordingly,

**IT IS ORDERED** that the motion for contempt filed on behalf of plaintiff, Pearl River Navigation, Inc., is **DENIED**.

New Orleans, Louisiana, July 7, 2008.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**